******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

# GMAT LEGAL TITLE TRUST 2014-1, U.S. BANK, NATIONAL ASSOCIATION AS LEGAL TITLE TRUSTEE *v.* VITO CATALE ET AL.
## (AC 44132)

Bright, C. J., and Alvord and Prescott, Js.

### *Syllabus*

The plaintiff sought to foreclose a mortgage on certain real property owned by the defendants M and V. The plaintiff filed a motion for summary judgment along with three affidavits averring, respectively, to the outstanding debt, the fair market value of the property, and additional facts relevant to the motion for summary judgment. The plaintiff then filed an application for a prejudgment remedy to attach potential proceeds that V could obtain as a result of the adjudication or settlement of an unrelated pending civil action in which he was the plaintiff. The parties reached an agreement, which was approved by the trial court, pursuant to which the plaintiff agreed to defer a hearing on its prejudgment remedy application until the unrelated action was resolved and the defendants agreed to notify the plaintiff of any judgment or settlement of the unrelated action and further agreed not to dispose of any assets identified in the plaintiff's application. That following year, asserting that the defendants violated their agreement by failing to inform the plaintiff of the settlement of the unrelated action, the plaintiff filed what it deemed to be an ex parte application for a prejudgment remedy, which referenced the affidavits filed in connection with its motion for summary judgment and also attached an affidavit from an officer of its loan servicing company, averring facts in support of its allegation that exigency necessitated the granting of a prejudgment remedy. Without conducting a hearing, but after reviewing the objections filed by the defendants, the trial court granted the ex parte application, and the defendants appealed to this court. *Held*:

1. The trial court properly exercised jurisdiction over the application for a prejudgment remedy because the application was not defective with respect to the affidavits provided: the affidavit attached to the plaintiff's application and those that it incorporated by reference contained facts intending to establish probable cause that the plaintiff would prevail in obtaining a foreclosure judgment against the defendants, including a right to recover an amount greater than or equal to the amount of the prejudgment remedy that it sought; moreover, the applicable statute (§ 52-578e) does not require that affidavits in support of a prejudgment remedy be directly attached to the application itself nor does it bar a party from incorporating by reference affidavits that were already a part of the record and were available to the trial court and all parties.

2. The defendants' claim that, even if the trial court had jurisdiction, it improperly acted on the application without providing the defendants with a prompt postattachment hearing as due process required was moot: subsequent to the filing of this appeal, the trial court granted summary judgment as to the defendants' liability on the mortgage note and rendered a judgment of strict foreclosure in favor of the plaintiff, establishing that there was probable cause for a prejudgment remedy, that insufficient equity in the property existed to cover the total debt owed by the defendants to the plaintiff, and that the deficiency exceeded the prejudgment remedy in place; accordingly, any remand for a hearing regarding probable cause and any opportunity to be heard regarding the amount of the prejudgment remedy would be meaningless and could provide no practical relief to the defendants.

Argued November 17, 2021—officially released July 12, 2022

### *Procedural History*

Action to foreclose a mortgage on certain real property owned by the named defendant et al., and for other

relief, brought to the Superior Court in the judicial district of Fairfield, where the court, *Bellis, J.*, approved the parties' stipulated agreement regarding adjudication of the plaintiff's application for a prejudgment remedy; thereafter, the court, *Spader, J.*, granted the plaintiff's ex parte amended application for a prejudgment remedy, from which the named defendant et al. appealed to this court; subsequently, RMS Series Trust 2020-1 was substituted as the plaintiff; thereafter, the court, *Radcliffe, J.*, rendered judgment of strict foreclosure. *Affirmed in part; appeal dismissed in part.*

*Douglas R. Steinmetz*, with whom, on the brief, was *Maximino Medina, Jr.*, for the appellants (named defendant et al.).

*Paul N. Gilmore*, for the appellee (substitute plaintiff).

*Opinion*

PRESCOTT, J. In this residential mortgage foreclosure action, the defendants Vito Catale and Maria Catale[1] appeal from the trial court's granting of an amended "ex parte" application for a prejudgment remedy (ex parte application)[2] filed by the original plaintiff, GMAT Legal Title Trust 2014-1, U.S. Bank, National Association as Legal Title Trustee.[3] The defendants claim that the court improperly granted the plaintiff's ex parte application because (1) certain statutorily required affidavits either were missing or insufficient and, therefore, the court lacked jurisdiction over the ex parte application, and (2) even if the court had jurisdiction over the ex parte application, the court deprived the defendants of due process by granting it without providing the defendants with a postattachment hearing at which they would have had an opportunity to challenge both whether probable cause existed to order a prejudgment remedy and in what amount.

As to the first claim, we conclude that the court properly exercised jurisdiction over the application for prejudgment remedy. As to the second claim, we conclude that, even if we agreed with the defendants that they were entitled to an opportunity to be heard at a postattachment hearing despite the challenges posed during the early stages of the COVID-19 pandemic,[4] no practical relief can be afforded to them by ordering a hearing at this time because, during the pendency of this appeal, the court rendered a final judgment in the underlying foreclosure action in favor of the plaintiff that conclusively established both probable cause for the granting of a prejudgment remedy and that the plaintiff likely would be entitled to a deficiency judgment that would far exceed the amount of the prejudgment remedy ordered. In other words, under the unique circumstances present here, the defendants have failed to demonstrate how they would benefit from a postattachment hearing and, therefore, the remainder of their arguments on appeal have been rendered moot. Accordingly, we affirm the judgment of the court.[5]

The record reveals the following undisputed facts and procedural history. In August, 2017, the plaintiff commenced the underlying action to foreclose a mortgage on residential property in Monroe owned by the defendants.[6] In July, 2018, following the termination of foreclosure mediation proceedings, the defendants filed their answer and special defenses. The plaintiff thereafter filed a motion to strike the special defenses and, later, a motion for summary judgment as to liability on the note. In support of the motion for summary judgment, the plaintiff filed an affidavit of debt dated September 6, 2018, in which a loan servicing officer with knowledge of the account averred in relevant part that, as of that date, the outstanding balance due on the underlying note was $974,809.77. The plaintiff also

filed an affidavit from a real estate appraiser averring that the fair market value of the property as of October 16, 2018, was $516,000. Finally, the plaintiff filed a third affidavit that averred to additional facts relevant to the summary judgment motion.

On February 14, 2019, shortly after the initial argument on its pending motions,[7] the plaintiff filed an application for a prejudgment remedy along with a motion for disclosure of property and assets. The stated purpose of the application was to attach potential proceeds that Vito Catale might obtain as a result of the adjudication or settlement of an unrelated pending civil action in which he was the plaintiff (*Catale* action). See *Catale* v. *DiGennaro*, Superior Court, judicial district of Fairfield, Docket No. CV-17-6062268-S. The plaintiff's application for a prejudgment remedy incorporated by reference the affidavits that it previously had filed with the court in support of its motion for summary judgment and alleged that these affidavits established that probable cause existed that the plaintiff would be entitled to a deficiency judgment in the foreclosure matter in an amount equal to or greater than $458,000. The defendants filed a request for a hearing to contest the application, checking a box on the form response that they claimed "a defense, counterclaim, set-off, or exemption."

The parties subsequently reached a stipulated agreement regarding adjudication of the application for prejudgment remedy. The court approved the agreement and made it an order of the court on March 13, 2019. The agreement provided in relevant part that the plaintiff agreed to defer a hearing on its application for prejudgment remedy and the defendants' objection thereto until after a resolution of the *Catale* action. In exchange, the defendants agreed not to dispose of any assets identified in the prejudgment remedy application, including any future settlement proceeds, and to promptly notify the plaintiff when a judgment or settlement was reached in the *Catale* action. The parties further agreed to cooperate with each other and to make best efforts to coordinate with the trial court to schedule a hearing on the application for prejudgment remedy as soon as possible after a resolution of the *Catale* action.

On June 1, 2020, the plaintiff filed the ex parte application that is the focus of the present appeal.[8] The ex parte application again incorporated by reference the affidavits that the plaintiff had filed in support of its motion for summary judgment and that were referenced in its earlier application for a prejudgment remedy. The plaintiff also attached several exhibits, including an affidavit from an officer of its loan servicing company that averred facts in support of the plaintiff's new allegations that exigency necessitated the granting of an ex parte prejudgment remedy.

According to the plaintiff's ex parte application, the

defendants intentionally violated the March 13, 2019 stipulated order by failing to notify it of a settlement that purportedly had been reached in the *Catale* action. One of the exhibits attached to the ex parte application was a transcript from a court-ordered mediation session in the *Catale* action in which the parties discuss the terms of an alleged settlement agreement with the court.[9] The plaintiff asserted in its ex parte application that there was a reasonable likelihood that the defendants (1) were about to remove property from the state, (2) were about to fraudulently dispose of some of this property, and (3) had fraudulently hidden or withheld money, property or effects. The plaintiff noted in its memorandum of law in support of the ex parte application that "[t]he reason for the ex parte process in this matter is to dispense with the preattachment hearing requirement, as there are grounds for ex parte process. The stipulated order enjoins the defendant[s] from transferring, pledging, hypothecating or otherwise disposing of the target asset until after a hearing can be held, the [prejudgment remedy] application is decided and the plaintiff thereafter has ten days to effectuate the prejudgment remedy order. Therefore, the application is being e-filed in such a way that the defendant[s] actually will receive notice of the application. There still is need for prompt judicial action, though, as the defendant[s] already [are] in violation of the stipulated order."

With its ex parte application, the plaintiff also filed a caseflow request form that indicated that it had informed the defendants of the ex parte application and that they had not consented to it. Later that same day, the court issued an order granting the caseflow request and stating: "The court will consider the amended application ex parte."

The following day, June 2, 2020, the defendants filed a motion asking the court to vacate its order granting the plaintiff's caseflow request to consider the application "ex parte . . . ." They argued that "[t]he application raise[d] factual issues [that could not] be resolved on the papers" and that "[e]x parte consideration under the circumstances [was] unwarranted and inconsistent with the defendants' due process rights." The court later denied that motion, stating: "The court gave consideration to due process concerns and limited its [prejudgment remedy] to real property and, essentially, a lien on settlements in other cases which were basically agreed to by counsel that the funds should be held in escrow previously in this case. The court will consider expanding or reducing upon the [prejudgment remedy] after a disclosure of assets is completed and further proceedings occur."

Also on June 2, 2020, *and prior to any action by the court on the ex parte application,* the defendants filed a response to the application itself. Specifically, the

defendants objected to the application "being given ex parte consideration," disputed that any final agreement had been reached in the *Catale* action, and requested an evidentiary hearing "when the court may do so safely, given the COVID-19 procedures and limitations now in place." The defendants did not claim that the court lacked jurisdiction over the application due to the plaintiff's failure to attach copies of all supporting affidavits directly to the ex parte application rather than incorporating some by reference. The defendants, later that same day, filed a "supplemental objection" to which they attached an affidavit by Vito Catale's attorney in the *Catale* action.

On June 2, 2020, the court, *Spader, J.*, issued an order granting the ex parte application without conducting a hearing but on due consideration of the defendants' papers offered in objection. Specifically, the court's order stated in relevant part: "From an examination of the amended application (motion), and the original application, and filings in this matter, affidavits in support of the amended application *and giving due consideration to the defendants' amended answer and special defenses as set forth and the objection they filed, with its exhibit A*, it is found that there is probable cause to sustain the validity of the plaintiff's claim, and that the application should be granted ex parte because of the inconsistencies alleged to have been set forth before Judge Arnold indicating that the matters bearing docket number FBT-CV-15-6052908-S and FBT-CV-17-6022260-S had been settled and the e-mails from the defendants' counsel in this matter alleging that they have not been. The previous agreements of the parties, approved by Judge Bellis at docket [entry] #174, clearly involved these other matters and any proceeds thereunder being held in escrow and granting this motion further ensures that all counsel understand that agreement. The court finds, based upon the contents of the amended application and the e-mails attached thereto, that there is a reasonable likelihood that the defendants are about to remove property from this state and/or dispose of it and/or fraudulently hide or withhold property or money (such as the settlement proceeds, when and if received) to prevent the satisfaction of the plaintiff's debts should they prevail herein.

"Therefore, it is hereby ordered that the plaintiff may attach to the value of $458,000: [1] any and all real property of the defendants and [2] potential receipt of funds/settlements from lawsuits.

"The request for the disclosure of assets is also approved. [Although] it is unclear when the examination incident to the same could occur in court, if counsel cannot agree to a date to do so within their own offices, the court should be advised and will schedule this for a date as soon as practicable, although as an officer of the court, the defendants' attorney is expected to try

to accomplish this examination prior to the resumption of court operations, if practicable. When such operations resume, the court will consider future filings of the defendants relating to this motion.

"[Although] the court is not allowing the seizure of bank accounts in relation to this motion because of the inability of the court to have an immediate hearing and due process concerns, it will be evident in the disclosure of assets if funds are being transferred solely to avoid the plaintiff's debts and a future plaintiff's motion will be considered following such disclosure." (Emphasis added; footnote omitted.) The defendants timely filed the present appeal on June 9, 2020.[10]

During the pendency of the appeal, further proceedings have occurred that have a bearing on our consideration of the issues raised on appeal.[11] First, although at the time of oral argument of the present appeal it remained hotly contested as to whether any settlement had been reached in the *Catale* action at the time the court acted on the ex parte application, the parties now agree that settlement documents were signed by the parties in the *Catale* action on October 7, 2021, and that matter has been withdrawn. Furthermore, in the underlying foreclosure action, the court first rendered summary judgment as to liability in favor of the plaintiff and subsequently rendered a judgment of strict foreclosure in favor of the plaintiff, finding that the fair market value of the property, as stipulated by the parties, was $685,000; and that the updated amount of debt owed by the defendants was $1,119,846.02, not including attorney's fees and costs. The defendants have filed a separate appeal from the judgment of foreclosure.[12]

I

The defendants first claim that the court lacked jurisdiction to grant the plaintiff's ex parte application due to the plaintiff's failure to attach directly to the ex parte application affidavits that were required by statute and were necessary to establish probable cause that the plaintiff would obtain a judgment in its favor. The plaintiff argues that (1) its application was not defective with respect to the affidavits provided and (2) even if we agreed with the defendants' claim, such a defect did not implicate or deprive the court of jurisdiction or authority to award a prejudgment remedy under the circumstances. We agree with the plaintiff on both accounts.[13]

We begin with our standard of review and other relevant legal principles. "A determination regarding a trial court's subject matter jurisdiction is a question of law over which we [generally] exercise plenary review. . . . Subject matter jurisdiction involves the [court's power] to adjudicate the type of controversy presented by the action before it. . . . [A] court lacks discretion to consider the merits of a case over which it is without

jurisdiction . . . . The subject matter jurisdiction requirement may not be waived by any party, and also may be raised by a party, or by the court sua sponte, at any stage of the proceedings, including on appeal. . . . In determining whether a court has subject matter jurisdiction, however, we indulge every presumption in favor of jurisdiction." (Citations omitted; internal quotation marks omitted.) *Reinke* v. *Sing*, 328 Conn. 376, 382, 179 A.3d 769 (2018). The proper scope of a court's statutory authority also presents a question of law over which our review is plenary. See *Tarro* v. *Mastriani Realty, LLC*, 142 Conn. App. 419, 431, 69 A.3d 956, cert. denied, 309 Conn. 912, 69 A.3d 308 (2013), and cert. denied, 309 Conn. 912, 60 A.3d 309 (2013). "The power of the court to hear and determine, which is implicit in jurisdiction, is not to be confused with the way in which that power must be exercised in order to comply with the terms of the statute." (Internal quotation marks omitted.) *Amodio* v. *Amodio*, 247 Conn. 724, 728, 724 A.2d 1084 (1999).

"The remedy of attaching and securing a defendant's property to satisfy a potential judgment in favor of the plaintiff is unknown to the common law and is purely a statutory vehicle." *Glanz* v. *Testa*, 200 Conn. 406, 408, 511 A.2d 341 (1986). "The law governing prejudgment remedies is codified in General Statutes §§ 52-278a through 52-278n." *Goodwin* v. *Pratt*, 10 Conn. App. 618, 620, 524 A.2d 1168 (1987). General Statutes § 52-278e contains the procedures by which a plaintiff may obtain a prejudgment remedy ex parte without a preattachment hearing.[14]

Section 52-278e (a) provides that the court may order a prejudgment remedy without the usual hearing provided for in General Statutes §§ 52-278c and 52-278d on the filing of an affidavit averring facts sufficient to show that (1) probable cause exists that a judgment in an amount greater than or equal to the prejudgment remedy sought will be rendered in favor of the plaintiff and (2) exigent circumstances warrant immediate action because the defendant is about to remove from the state or fraudulently hide or transfer money or other property that could be used to satisfy that judgment.

In order to comport with federal constitutional due process requirements; see *Connecticut* v. *Doehr*, 501 U.S. 1, 17–18, 111 S. Ct. 2105, 115 L. Ed. 2d 1 (1991); the statute requires some predicate showing by the plaintiff that there is a need for exigency and further guarantees a defendant, on request, an opportunity for a prompt postattachment hearing at which the defendant will have an opportunity to challenge the bases for the prejudgment remedy.[15]

In other words, "[§] 52-278e (a) sets forth two requirements that must be satisfied before a court can allow the issuance of an ex parte prejudgment remedy. . . . [Furthermore, a] defendant against whom an ex parte

prejudgment remedy has been issued may move to dissolve or modify the attachment by following the procedures set forth in § 52-278e (d). . . . Upon such a motion, the trial court shall proceed to hold a hearing . . . . If the court determines at such hearing requested by the defendant that there is probable cause that judgment will be rendered in the matter in favor of the plaintiff and . . . that there is probable cause to believe [the exigency ground asserted in the plaintiff's application] exists, the prejudgment remedy granted shall remain in effect. If the court determines there is no probable cause to believe that a judgment will be rendered in the matter in favor of the plaintiff or [no exigency] ground exists, the prejudgment remedy shall be dissolved." (Citations omitted; internal quotation marks omitted.) *State* v. *Sunrise Herbal Remedies, Inc.*, 296 Conn. 556, 569, 2 A.3d 843 (2010).

It is well established that "prejudgment remedies are in derogation of the common law and, therefore, [our] prejudgment remedy statutes must be strictly construed . . . ." *Feldmann* v. *Sebastian*, 261 Conn. 721, 726, 805 A.2d 713 (2002). The statutes, however, also codify some degree of flexibility in their application, presumably due to the fact that prejudgment remedies may be sought and obtained at any time during litigation, including, as in the present case, during the pendency of an action or even postjudgment. See *Gagne* v. *Vaccaro*, 80 Conn. App. 436, 451–54, 835 A.2d 491 (2003) (prejudgment remedy may be sought and ordered postjudgment to protect plaintiff's interest in judgment while awaiting outcome of appeal), cert. denied, 268 Conn. 920, 846 A.2d 881 (2004). General Statutes § 52-278h expressly provides in relevant part that an application for prejudgment remedy may be filed "at any time after the institution of the action, *and the forms and procedures provided therein shall be adapted accordingly*." (Emphasis added.) Trial courts, thus, must be afforded some flexibility in the statutory procedures to the extent necessary to further the goals of the prejudgment remedy statutes. Consequently, the failure to strictly comply with all statutory requirements does not automatically implicate the subject matter jurisdiction of a court. See, e.g., *Fort Trumbull Conservancy, LLC* v. *New London*, 282 Conn. 791, 818–19 and n.16, 925 A.2d 292 (2007) (failure to comply with venue provision in statute did not implicate subject matter jurisdiction in same manner as failure to follow statutorily prescribed time limitations in absence of clear expression of contrary legislative intent). Rather, more often, a failure to comply with statutory requirements will implicate only the court's authority to act in accordance with the statute, not the court's subject matter jurisdiction. See *Amodio* v. *Amodio*, supra, 247 Conn. 728 ("[a]lthough related, the court's authority to act pursuant to a statute is different from its subject matter jurisdiction").

Because the defendants argue that this court's deci-

sion in *Lauf* v. *James*, 33 Conn. App. 223, 635 A.2d 300 (1993), is controlling with respect to their "jurisdictional" claim, we briefly turn to a discussion of that case. The plaintiff in *Lauf* initiated a civil action against the defendant alleging that he had sexually assaulted her on various occasions. See id., 224–25. With her complaint, the plaintiff filed an application for a prejudgment remedy seeking to attach real property of the defendant in the amount of $500,000. Id. The plaintiff attached to her application "what purported to be an affidavit of the plaintiff averring to the facts contained in the complaint. This affidavit had been faxed to the plaintiff in California where she signed it and then faxed it back to her attorney in Connecticut. Upon receipt of the faxed affidavit, the attorney took the plaintiff's acknowledgement over the telephone." Id., 225. At a hearing on the prejudgment remedy, the defendant moved to dismiss or strike the application because, according to the defendant, due to the manner in which it was acknowledged, the purported affidavit was not, in fact, an affidavit and, thus, did not satisfy statutory requirements. Id. The trial court denied the motion and later granted the application for prejudgment remedy. Id., 225–26. The defendant appealed. Id., 224.

This court reversed the decision of the trial court granting the application for the prejudgment remedy. Id. Although the court used somewhat imprecise language in *Lauf*, it recognized the distinction between the court's subject matter jurisdiction and what we now commonly refer to as the court's authority to act, stating that "[t]here are three separate elements of the jurisdiction of a court: jurisdiction over the person, jurisdiction over the subject matter, and *jurisdiction to render the particular judgment*." (Emphasis added.) Id., 226. The court indicated that the controlling issue on appeal was "whether an affidavit must be submitted along with an application for prejudgment remedy in order for the trial court to order and conduct a hearing on an application for a prejudgment remedy." Id. It further stated that the plaintiff had conceded during oral argument of the appeal "that the purported affidavit did not constitute an affidavit and that [the Appellate Court] should proceed *as if there had been no affidavit submitted with the application for prejudgment remedy*." (Emphasis added.) Id. After concluding that the court had both subject matter jurisdiction and personal jurisdiction over the application, it turned to whether the court nevertheless lacked "jurisdiction" to grant the prejudgment remedy application, which we construe to mean whether the court had statutory authority over the application. Id., 226–27.

The court held that a party seeking a prejudgment remedy must comply with the requirements of the prejudgment remedy statutes and that "one of the prerequisites to the granting of such a remedy is that the plaintiff or some competent person sign an affidavit stating facts

sufficient to establish probable cause that judgment will be rendered in the matter in favor of the plaintiff." (Internal quotation marks omitted.) Id., 227–28. The court concluded: "Because, as conceded by the plaintiff, we are to decide this case *as if no affidavit had been filed with the application*, we conclude that the plaintiff failed to comply with the requirements of . . . § 52-278c. Therefore, the trial court did not have jurisdiction to issue the order granting the prejudgment remedy." (Emphasis added; footnote omitted.) Id., 228.

Turning to the facts of the present case, we begin by noting that the court plainly has jurisdiction over the underlying foreclosure action in which the ex parte application was filed. More importantly, we are not persuaded that the holding in *Lauf* compels the outcome sought by the defendants. This is not a case in which the plaintiff outright failed to provide any affidavits in support of the prejudgment remedy application. The plaintiff directly attached one affidavit to its ex parte application in support of its assertion that the defendants were about to remove from the state, transfer, or otherwise hide proceeds from the settlement of the *Catale* action. The plaintiff also incorporated by reference other affidavits that it previously had filed in support of its motion for summary judgment. Those affidavits contained facts intended to establish probable cause that the plaintiff would prevail in obtaining a foreclosure judgment against the defendants, including a right to recover a deficiency judgment in an amount equal to or greater than the $458,000 prejudgment remedy it sought. Although the defendants claim that the application for prejudgment remedy was statutorily defective because all of the affidavits offered were not directly attached to the application itself, they have cited to no statutory language or any other authority, nor have we found any, that would support us extending the holding in *Lauf* and concluding that an affidavit in support of a prejudgment remedy must be directly attached to the application itself rather than incorporated by reference to an earlier pleading.

Nothing in the statutory language of § 52-278e can be read to bar a party from meeting its obligation to provide a supporting affidavit by incorporating by reference an affidavit that is already a part of the record and available to the court and all parties. The Federal Rules of Civil Procedure expressly permit an exhibit attached to a pleading to be adopted and incorporated by reference in any later pleading or motion. Fed. R. Civ. P. 10 (c).[16] We see no reason why a different rule should apply in the courts of this state. In fact, it would serve little purpose to require a plaintiff to attach to its application affidavits that the court already has before it and that had previously been served on the defendants.

In sum, we are not convinced that the plaintiff failed to comply with the requirements of the prejudgment

remedy statutes by incorporating by reference some of the affidavits provided in support of its application. Accordingly, we conclude that the court both had subject matter jurisdiction over the application and that the application was not defective, such that it deprived the court of statutory authority to adjudicate it. We therefore reject the defendants' claim to the contrary.

II

The defendants next claim that, even if the court had jurisdiction over the ex parte application, it improperly acted on it without providing the defendants with a prompt postattachment hearing as due process requires. For the following reasons, we conclude that this claim and all of its related arguments are now moot.

"Mootness presents a circumstance wherein the issue before the court has been resolved or had lost its significance because of a change in the condition of affairs between the parties. . . . Since mootness implicates subject matter jurisdiction . . . it can be raised at any stage of the proceedings. . . . A case becomes moot when due to intervening circumstances a controversy between the parties no longer exists. . . . An issue is moot when the court can no longer grant any practical relief. . . . Whenever a claim of lack of jurisdiction is brought to the court's attention, it must be resolved before the court can proceed. . . . The test for determining mootness of an appeal is whether there is any practical relief this court can grant the appellant. . . . [I]t is not the province of appellate courts to decide moot questions, disconnected from the granting of actual relief or from the determination of which no practical relief can follow. . . . If no practical relief can be afforded to the parties, the appeal must be dismissed." (Internal quotation marks omitted.) *Federal Deposit Ins. Corp.* v. *Caldrello*, 79 Conn. App. 384, 390, 830 A.2d 767 (2003).

The gravamen of the defendants' remaining nonjurisdictional arguments is that their rights to due process were violated because they were not afforded any meaningful opportunity to be heard regarding probable cause to support a prejudgment remedy. Subsequent to the filing of the current appeal, however, the court granted summary judgment as to the defendants' liability on the mortgage note and later rendered a judgment of strict foreclosure in favor of the plaintiff in the underlying action. It is axiomatic that the probable cause standard is lower than that required to demonstrate proof by a preponderance of the evidence, the standard needed to obtain a judgment in a foreclosure matter. See *TES Franchising, LLC* v. *Feldman*, 286 Conn. 132, 137, 943 A.2d 406 (2008); *GMAC Mortgage, LLC* v. *Ford*, 144 Conn. App. 165, 176, 73 A.3d 742 (2013). Because the plaintiff has prevailed on the merits of its action, this conclusively has established that there is probable cause for a prejudgment remedy, and any remand for

a hearing regarding probable cause would, at this stage of the proceedings, be meaningless. Moreover, as we have already indicated, the existence of an appeal from the foreclosure judgment does not affect this conclusion.

Similarly, the judgment rendered establishes that insufficient equity in the property exists to cover the total debt owed by the defendants to the plaintiff and that this deficiency exceeds the $458,000 prejudgment remedy now in place. Accordingly, any opportunity to be heard regarding the amount of the existing prejudgment remedy could provide no practical relief to the defendants and would amount to nothing more than a waste of judicial resources.[17] As previously stated in footnote 13 of this opinion, nothing in our analysis should be viewed as deterring the defendants from seeking a modification or dissolution of the existing prejudgment remedy, if such action is deemed warranted, by filing an appropriate motion with the trial court.

The judgment is affirmed with respect to that portion of the appeal challenging the trial court's jurisdiction over the plaintiff's ex parte application for prejudgment remedy; the remainder of the appeal is dismissed as moot.

In this opinion the other judges concurred.

[1] The foreclosure complaint named the following parties as additional defendants by virtue of an interest held in the mortgaged property subsequent in right to that of the plaintiff: Mortgage Electronic Registration Systems, Inc., as nominee for WMC Mortgage Corp.; WMC Mortgage Corp.; Cavalry SPV I, LLC; Advanced Radiology Consultants, LLC; the Department of Revenue Services; and Connecticut Distributors, Inc. None of these additional defendants is participating in the present appeal and, thus, all references to the defendants in this opinion are to the Catales only.

[2] As we discuss more fully in footnote 8 of this opinion, the "ex parte" designation used by the plaintiff on the application is somewhat of a misnomer given that the defendants filed a response to the application that the court considered prior to acting on the ex parte application.

[3] During the pendency of this appeal, the note, the mortgage and all rights to the prejudgment remedies were transferred to RMS Series Trust 2020-1, which was subsequently substituted as the plaintiff and appellee.

[4] It is unnecessary to provide a detailed list or a timeline of the actions taken by the Judicial Branch and the Executive Branch to minimize the spread of COVID-19 and their effect on court proceedings. It will suffice to note that, at the time of the filing of the application for prejudgment remedy that is the subject of the present appeal, the Superior Court was scheduling and hearing only matters that the Judicial Branch deemed "Priority 1 Business Functions." Statement from Judge Patrick L. Carroll III, Chief Court Administrator (March 12, 2020), available at https://www.jud.ct.gov/HomePDFs/StatementChiefCourtAdministratorCarroll0320.pdf (last visited June 28, 2022). Among those matters listed on the Judicial Branch website as constituting "Priority 1 Business Functions" were "[e]x parte motions . . . ." Id. It is unnecessary in resolving this appeal to determine whether "ex parte motions" included ex parte applications for prejudgment remedies.

[5] On the day that the appeal was assigned for oral argument, the plaintiff filed a motion to dismiss the appeal as moot because, at that time, the court had rendered summary judgment as to liability in favor of the plaintiff, which, according to the plaintiff, established probable cause and would allow the plaintiff to obtain a new prejudgment remedy. The defendants later filed an opposition to that motion. In light of our disposition of the appeal, no further action is necessary on that motion.

[6] A prior action to foreclose the mortgage was initiated in 2011, but that action was dismissed on dormancy grounds in January, 2017. See *Consumer Solutions, LLC* v. *Catale*, Superior Court, judicial district of Fairfield, Docket

No. CV-11-6018401-S (January 23, 2017).

[7] The record shows that, although the motions initially were argued before the court, *Bruno, J.*, on January 30, 2019, they were not acted on and later were assigned for reargument before Judge Spader over an objection by the defendants on the ground that the plaintiff had not timely sought reassignment pursuant to Practice Book § 11-19 (b). Following reargument, the court granted the motion to strike with respect to all special defenses except for one that alleged a lack of subject matter jurisdiction, which the court indicated it would consider in ruling on the motion for summary judgment. As to the motion for summary judgment, the court decided that, although it "believe[d] that the plaintiff has successfully set forth its prima facie case," it could not "fully adjudicate the motion [for summary judgment] at this time [because] the defendants have fifteen days in which to file a new pleading after this granting of the motion to strike pursuant to Practice Book § 10-44." It instructed that, "[i]f the defendants replead, the plaintiff should reclaim its motion for summary judgment supplemented with additional responses to the new pleading." The defendants timely filed an amended answer and special defenses. The plaintiff again moved to strike the special defenses, which, during the pendency of the present appeal, the court again granted with the exception of the one challenging the court's subject matter jurisdiction. On April 16, 2021, the court granted summary judgment as to liability only in favor of the plaintiff, indicating that it "will review the balance due and the form of the judgment at the time the plaintiff moves for strict foreclosure." The plaintiff filed a motion for a judgment of strict foreclosure on September 1, 2021.

[8] The plaintiff chose to title the ex parte application "Amended Application (Motion)—Now Ex Parte—For Prejudgment Remedy." We are not convinced that this title accurately reflects the true nature of the amended application in this case. "Ex parte" is commonly understood to mean "[d]one or made at the instance and for the benefit of one party only, *and without notice to, or argument by, anyone having an adverse interest . . . .*" Black's Law Dictionary (11th Ed. 2019) p. 722. As the procedural history that follows makes clear, the defendants not only received notice and a copy of the ex parte application, but they also filed a written response that was considered by the court prior to it acting on the merits of the ex parte application. Nevertheless, whether the application properly may be construed as "ex parte" has no bearing on our analysis or on the resolution of the present appeal.

[9] The parties did not agree on whether a settlement was in fact reached at that time such that the defendants' obligation to work with the plaintiff to obtain a hearing on the as yet unadjudicated initial application for a prejudgment remedy was triggered. The defendants maintained that only a framework of a potential settlement agreement had been reached at the time the plaintiff filed the ex parte application and that such framework "expressly encompassed numerous material substantive conditions precedent . . . which never happened." In its initial decision granting the ex parte application, the court made note that the record contained conflicting evidence regarding whether a settlement was reached, and the court made no definitive finding one way or the other. In its contemporaneous ruling on the defendants' objection to the ex parte application, however, the court appears to have found that there was in fact a settlement agreement. Because our resolution of this appeal does not turn on whether a valid settlement, in fact, ever existed prior to the court granting the ex parte application, we need not resolve the ambiguous record regarding this issue. We note only that the *Catale* action undisputedly has since been resolved.

[10] Although orders pertaining to prejudgment remedies are ordinarily, by their nature, interlocutory rulings, General Statutes § 52-278*l* (a) deems certain prejudgment remedy rulings to be final judgments for purposes of appellate jurisdiction. Any such appeal, however, must be taken "within seven days of the rendering of the order from which the appeal is to be taken." General Statutes § 52-278*l* (b).

[11] On February 8, 2022, we ordered the parties, sua sponte, to file simultaneous supplemental briefs apprising us of "any and all relevant proceedings, filings, or other developments" in the underlying action and the *Catale* action that had "occurred since oral argument of the present appeal and the filing of the [plaintiff's] motion to dismiss [the appeal as moot]" and addressing, inter alia, "the legal or factual significance, if any, of the same on this court's consideration of whether the present appeal, or any of the claims raised therein, should be dismissed as moot . . . ."

[12] The fact that the defendants have taken an appeal from the final judg-

ment of foreclosure does not affect our conclusion in this opinion that the judgment of foreclosure, whether affirmed or reversed, vitiates any argument that there was a lack of probable cause that the plaintiff would obtain a judgment in its favor, as would have been necessary to grant a prejudgment remedy. Proceedings to enforce or carry out a judgment may be stayed while an appeal is pending. See Practice Book § 61-11. Until a judgment is overturned on appeal, however, it is still presumed valid and a conclusive adjudication of the parties' rights. See *State* v. *Andino*, 173 Conn. App. 851, 874–75 n.12, 162 A.3d 736 (rejecting claim that Appellate Court judgment is not binding precedent while appeal from judgment is pending before our Supreme Court), cert. denied, 327 Conn. 906, 170 A.3d 3 (2017).

[13] "[T]he court's authority to act pursuant to a statute is different from its subject matter jurisdiction." *Amodio* v. *Amodio*, 247 Conn. 724, 728, 724 A.2d 1084 (1999). Although it is not entirely clear from their briefing whether the defendants claim that the court lacked subject matter jurisdiction or only statutory authority to act with respect to the prejudgment remedy, in either case, if true, the prejudgment remedy arguably would be void ab initio and the defendants arguably would be entitled to a remand directing the court to vacate the prejudgment remedy. By contrast, as discussed in part II of this opinion, the remainder of the defendants' arguments on appeal do not directly implicate either the court's jurisdiction or authority to act but, rather, challenge the court's decision not to afford the defendants a prompt postattachment hearing at which they presumably would have had an opportunity to present evidence necessary to rebut whether probable cause existed for the ex parte prejudgment remedy as well as the amount of such remedy. If we agreed with the defendants regarding these remaining arguments, the appropriate remedy would not be an order vacating the existing prejudgment remedy outright, but a remand for a hearing in accordance with due process to determine whether the prejudgment remedy in place should be maintained. We are unconvinced that any practical relief can flow from such a remand and believe a new hearing regarding the existing prejudgment remedy would, at this juncture, also be a waste of judicial resources. Nothing in our resolution of the present appeal should be viewed as preventing either party from moving the trial court for an appropriate modification or dissolution of the existing prejudgment remedy.

[14] General Statutes § 52-278e provides in relevant part: "(a) The court or a judge of the court may allow the prejudgment remedy to be issued by an attorney without hearing as provided in sections 52-278c and 52-278d upon the filing of an affidavit sworn to by the plaintiff or any competent affiant setting forth a statement of facts sufficient to show that there is probable cause that a judgment in the amount of the prejudgment remedy sought, or in an amount greater than the amount of the prejudgment remedy sought, taking into account any known defenses, counterclaims or set-offs, will be rendered in the matter in favor of the plaintiff and that there is reasonable likelihood that the defendant (1) has hidden or will hide himself so that process cannot be served on him or (2) is about to remove himself or his property from this state or (3) is about to fraudulently dispose of or has fraudulently disposed of any of his property with intent to hinder, delay or defraud his creditors or (4) has fraudulently hidden or withheld money, property or effects which should be liable to the satisfaction of his debts.

"(b) If a prejudgment remedy is issued pursuant to this section, the plaintiff shall include in the process served on the defendant a notice and claim form, in such form as may be prescribed by the Office of the Chief Court Administrator . . . .

"(c) The notice and claim form required by subsection (b) of this section shall contain (1) the name and address of any third person holding property of the defendant who is subject to garnishee process preventing the dissipation of such property, and (2) a statement of the procedure set out in subsection (d) of this section for requesting a hearing to move to dissolve or modify the prejudgment remedy.

"(d) A defendant may move to dissolve or modify a prejudgment remedy allowed pursuant to this section by any proper motion or by return to the Superior Court of a signed claim form that indicates, by the checking of a box on the claim form, whether the claim is an assertion of a defense, counterclaim, set-off or exemption, an assertion that any judgment that may be rendered is adequately secured by insurance, an assertion that the amount of the prejudgment remedy is unreasonably high, a request that the plaintiff be required to post a bond to secure the defendant against any damages that may result from the prejudgment remedy, or a request that the defendant be allowed to substitute a bond for the prejudgment remedy.

"(e) The court shall proceed to hold a hearing and determine any motion made under subsection (d) of this section not later than seven business days after its filing. If the court determines at such hearing requested by the defendant that there is probable cause that judgment will be rendered in the matter in favor of the plaintiff and, if the plaintiff has relied on a ground set forth in subsection (a) of this section, that there is probable cause to believe such ground exists, the prejudgment remedy granted shall remain in effect. If the court determines there is no probable cause to believe that a judgment will be rendered in the matter in favor of the plaintiff or, if a ground set forth in subsection (a) of this section was relied on, to believe such ground exists, the prejudgment remedy shall be dissolved. An order shall be issued by the court setting forth the action it has taken. . . ."

[15] The predecessor to the current version of § 52-278e permitted the court to allow an ex parte prejudgment remedy without requiring any initial showing of exigent circumstances warranting such relief. See *Connecticut* v. *Doehr*, supra, 501 U.S. 18 (holding "Connecticut provision before us, by failing to provide a preattachment hearing *without at least requiring a showing of some exigent circumstance*, clearly falls short of the demands of due process" (emphasis added)).

[16] Rule 10 (c) of the Federal Rules of Civil Procedure provides: "A statement in a pleading may be adopted by reference elsewhere in the same pleading or in any other pleading or motion. A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes."

[17] The defendants raise a number of arguments as to why their claims are not moot, all of which we have considered and determine lack sufficient merit to warrant any extended discussion. They further argue that, even if their claims are moot, we should review them under the "capable of repetition, yet evading review" exception to the mootness doctrine. See *Loisel* v. *Rowe*, 233 Conn. 370, 382, 660 A.2d 323 (1995). We are not persuaded that the defendants have established that this exception to the mootness doctrine is applicable under the circumstances of this case. See id. The defendants also argue that their creditors' may be affected with respect to their priority to recover funds subject to the prejudgment remedy order and that some practical relief might flow to them as a result of our review of the remaining claims on appeal. The defendants have no standing, however, to assert and rely on rights and interests of third parties to overcome mootness. See *Ganim* v. *Smith & Wesson Corp.*, 258 Conn. 313, 347–48, 780 A.2d 98 (2001) ("[w]here . . . the harms asserted to have been suffered directly by a [party] are in reality derivative of injuries to a third party, the injuries are not direct but are indirect, and the [party] has no standing to assert them"). The question is whether any practical relief may be granted to the parties, and we answer that question in the negative.